[Civ. No. 4457.   Fourth Dist.   Oct. 31, 1952.]

In re JOE BARAJAS, a Minor, Appellant.

[Civ. No. 4458.   Fourth Dist.   Oct. 31, 1952.]

In re TONY LOUIS SANCHEZ, a Minor, Appellant.

[Civ. No. 4459.   Fourth Dist.   Oct. 31, 1952.]

In re RICHARD NAVA SAUCEDO, a Minor, Appellant.

William M. Taylor for Appellants.

William O. Mackey, County Counsel, and Ray T. Sullivan, Jr., Deputy County Counsel, for Respondent.

BARNARD, P. J.—These are appeals from orders making three boys wards of the juvenile court, and ordering them committed to the Youth Authority. One of the boys was 13 years old and the other two were 14 years old. All three matters were heard together and the appeals are presented on one reporter's transcript and one set of briefs, with separate clerk's transcripts.

Each petition alleges as facts bringing the minor within the provisions of subdivision m of section 700 of the Welfare

and Institutions Code, that at 11 p.m. on June 27, 1951, in company with the other minors, he assaulted the person of a girl, 15 years old, by means of force likely to produce great bodily injury. At a hearing on July 13, 1951, the chief of police of Coachella, who filed the petitions, testified as to the story told to the officers by the girl, and that he had had no prior difficulty with any of the boys. When asked by the probation officer if it was his opinion that these boys could be controlled at home the court refused to let him answer, saying that this question called for a conclusion and was one for the court to decide. Briefly summarized, the boys testified that they were together and saw this girl; that two of them knew her; that one of them started to walk home with her and the others followed some half block behind; that the others came up and they all felt of her breasts; that she fell down on one knee and got up right away; and that they did not otherwise molest her.

The court continued the hearing to July 20, and ordered the girl brought in. She then testified that one of the boys asked to walk home with her, and the others followed a half block away; that the boy who was with her grabbed her by the arms and knocked her to the ground; that the other boys came up; that they all felt her breasts through the waist, and one of them put his hands between her legs; that they did not put their hands on her bare skin; that no attempt was made to disturb her clothes; that she tried to get away, and the boy holding her let her go; and that when she jumped up she ran and yelled for her father.

At the conclusion of her testimony the probation officer suggested that the parents were there if the court cared to hear from them. The court expressed his lack of patience with boys that go in gangs and attack girls, pointed out what this sort of thing might lead to, and said that this was the type of offense that the court must stop right at the beginning. He then stated that he would find the allegations of the petitions to be true, that each boy would be declared a ward of the juvenile court, and that each would be committed to the Youth Authority. The probation officer then said that some of the parents wanted to make a statement, if the court would listen to what they had to say. The court replied that he did not see how any such statement could affect his finding. Orders were entered the same day making these minors wards of the juvenile court and committing them to the Youth Authority.

Each of the minors filed a notice of motion for a rehearing. This matter was heard on August 10, the minors not being present but being represented by attorneys, and by consent the matter was treated as an application for a change or modification of the original order. (§ 745.) The attorneys expressed themselves as satisfied with the part of the order making the minors wards of the juvenile court, but argued for a change in the order committing them to the Youth Authority. In this connection they argued that no evidence had been taken on this phase of the matter before the order was made, and asked for a further hearing with respect to that matter. It was also stated, and not denied, that the probation officer had reported that in his opinion each minor's home was suitable and the parents were furnishing proper supervision and training. The court denied the applications saying that it was not necessary to take any further testimony, and that he would not have sent these boys to the Youth Authority if he "did not feel they would be improved."

The appellants contend that no proper notice was served; that they were not advised of their rights; that they were refused counsel; and that they were not allowed to present any defense. All but the last of these contentions are without merit and require no consideration.

The main contentions are that the court erred in taking custody from the parents without making the finding required by section 739 of this code, and by refusing to hear any evidence in that regard. So far as material here, that section provides that custody shall not be taken from the parents unless the court finds: "That the welfare of the person requires that his custody be taken from his parent or guardian." The only finding here, except as to residence and age, reads as follows:

"That the allegations as contained in the petition filed on the 2nd day of July, 1951, are true and because of the conduct on the part of the said minor, he is in need of the control and supervision of the Juvenile Court and in further need of some type of twenty-four hour supervision and training, and is a person coming within the provisions of Subdivision M of Section 700 of the Welfare and Institutions Code."

The respondent argues that this finding necessarily implies a finding of the fact required by section 739, and relies on *In re Ortiz*, 74 Cal.App.2d 810 [169 P.2d 664] and *In re Etherington*, 35 Cal.2d 863 [221 P.2d 942]. In the Ortiz case, where there had been a robbery with a gun, there was some

evidence on the welfare question and some of the oral remarks of the court referred to the welfare of the 17-year-old boy involved. The court held that a sufficient compliance with section 739 appeared. In the Etherington case, involving a 17-year-old boy, the evidence showed violations of law over a period of five years, and that previous leniency had been useless. The oral remarks of the trial judge disclosed that in making the order he had considered the welfare of the boy, and it was held that his remarks sufficiently disclosed that the required finding had been made. In a dissenting opinion, two of the judges expressed the opinion that a written finding is required.

In the cited cases some evidence was received bearing on the welfare issue, the court gave some consideration to it in his oral remarks, and the main question seems to have been whether a written finding was required. In the cases before us, there was no evidence bearing on that issue, unless it may have been a favorable report of the probation officer, and the evidence was rather strictly limited to the facts relating to the offense charged. The court's oral remarks, before the order was made and entered, were confined to the seriousness of the offense and the necessity for stopping such things. The order itself is expressly based on the conduct of the minors on this occasion. ▪ The fact that these boys needed ''some type of twenty-four hour supervision,'' does not necessarily exclude the possibility that such supervision could be supplied through cooperation between the probation officer and the parents. Apparently, the finding required by section 739 was overlooked, and it is somewhat difficult to read it into the finding as made.

While we are in complete accord with the court's remarks as to the seriousness of such offenses and the necessity for preventing them if possible, we think this matter should be reconsidered upon all of the evidence available, and a direct finding made on the welfare and custody issue.

The orders are reversed and the matters remanded to the juvenile court for rehearing.

Griffin, J., concurred.